**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-01598-NYW

DONNAMARIE D. MAEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) denying Plaintiff, DonnaMarie D. Maez's, application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). Pursuant to the Order of Reference dated April 21, 2015 [#22] and the Order of Reassignment dated February 10, 2015 [#19], this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).. The court has carefully considered the Complaint filed June 6, 2014 [#1], Defendant's Answer filed October 9, 2014 [#10], Plaintiff's Opening Brief filed November 19, 2014 [#14], Defendant's Response Brief filed January 7, 2015 [#15], Plaintiff's Reply Brief filed January 27, 2015 [#16], the entire

case file, the administrative record [#11][1], and applicable case law. For the following reasons, I respectfully AFFIRM IN PART, and REVERSE AND REMAND IN PART the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff DonnaMarie D. Maez ("Plaintiff" or "Ms. Maez") filed applications for DI on August 13, 2011, and SSI on August 24, 2011. [#11-2 at 13]. In each of those applications, she claimed that the date of onset of her disability was September 1, 2010. [*Id.*] After her claims were denied by the agency [#11-4 at 51-57], she made a timely request for a hearing before an Administrative Law Judge ("ALJ") [#11-2 at 23]. Ms. Maez was represented by counsel at the hearing. [*Id.*] At the time of her hearing before ALJ William Musseman on October 16, 2012, she was 48 years-old with a high school education and had not worked since the date of the alleged onset of her disability. [*Id.* at 24-25]. Prior to the date of alleged onset, Ms. Maez had worked at a restaurant, in roles that ranged from server to hostess. [*Id.* at 31, #11-6 at 163-164].

At the hearing, Plaintiff testified that she could not work due to bipolar disorder. [#11-2 at 25]. Specifically, she testified that her bipolar disorder caused her to have "low energy" four days out of the week; that during those times, she avoided contact with others in order to advert confrontations; and that her medications did little to improve her mood. [*Id.* at 25-28]. She further testified that she had trouble with concentrating [*id.* at 26], and that neither obesity nor her prior alcohol problems affected her ability to function. [*Id.* at 29-30]. A vocational expert, Bruce Magnuson ("VE" or "Mr. Magnuson"), also testified at the hearing. Mr. Magnuson

---

[1] In referring to the Administrative Record in this case, the court first refers to the document number as assigned by the Electronic Court Filing ("ECF") system, *i.e.*, [#11], but then to the official page number of the Administrative Record found in the bottom right hand corner to correspond to the Parties' briefing in this action.

testified that based on Ms. Maez' limitations as described in a hypothetical set forth by the ALJ, she would not be able to perform her prior work as a restaurant server. [*Id.* at 31-32]. He opined that with no exertional limits, a limitation of occasional contact with the public, and no complex tasks, there would be jobs available in the national economy. [*Id.* at 32]. With the additional limitation of being off task 100% of the time, Mr. Magnuson concluded that no compatible jobs existed. [*Id.* at 33].

Ms. Maez also submitted a Residual Functioning Capacity Questionnaire ("RFC") completed by her psychologist, Jared Ratner, M.D. [#11-7 at 215-218]. In that RFC Questionnaire, Dr. Ratner confirmed her diagnosis of bipolar disorder [*Id.* at 215], and indicated that she was extremely impaired in response to several questions, including her ability to remember locations and work-like procedures; her ability to understand and retain detailed instructions; her ability to concentrate for extended periods; her ability to complete a normal workweek without significant disruptions; and her ability to interact socially in an appropriate matter. [*Id.* at 215-217]. Dr. Ratner concluded that she would be off-task 100% of the time, and that she had been impaired at the levels reported in the RFC Questionnaire since "childhood." [*Id.* at 218].

After the hearing, the ALJ determined that Plaintiff was not disabled from the alleged date of onset through the date of the decision, December 3, 2012. [#11-2 at 13]. The Appeals Council denied her request for review, [*id.* at 2], and this action followed. [#1].

**STANDARD OF REVIEW**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

**ANALYSIS**

**I.     ALJ Determination**

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).  Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

To be entitled to SSI, an individual must be financially eligible, file an application for SSI, and be under a "disability" as defined in the Act. 42 U.S.C. § 1382; 20 C.F.R. § 416.202. The laws and regulations used for evaluating the existence of a disability are virtually identical for both DIB and SSI.  *Pettyjohn v. Shalala*, 13 F.3d 406 (10th Cir. 1993).  For either DIB or SSI, an individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.  Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are

denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity (RFC), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) assessing "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")). "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999).

In this case, the ALJ determined that Plaintiff met the insured requirements and had not engaged in substantial gainful activity since September 1, 2010, the date of alleged onset. [#11-2 at 15]. At step 2, the ALJ found that Plaintiff had a severe impairment, bipolar disorder.[2] [*Id.*]

---

[2] The ALJ also determined that medical evidence established that she has obesity and a history of alcohol abuse, but there was no evidence that either of these impairments have caused significant

7

However, at step 3, the ALJ concluded that Ms. Maez' bipolar disorder impairment did not meet or medically equal the severity of one of the listed impairments as governed by the Secretary's severity regulations. [*Id.* at 15-16]. In finding that Ms. Maez' impairment did not meet or medically equal the severity of one of the listed impairments as governed by the Secretary's severity regulations, the ALJ relied upon the opinion of Gayle Frommelt, Ph.D., a State agency medical consultant, who found that based on the medical and non-medical evidence in the record, Ms. Maez' impairment had not resulted in restriction to her activities of daily living, difficulties in maintaining social functioning, or repeated episodes of decompensation. [*Id.*]. She also found that Ms. Maez had mild difficulties in maintaining concentration, persistence, or pace. [*Id.*] The ALJ accepted Dr. Frommelt's opinion that there was no medically documented history of a chronic affective disorder that had caused more than a minimal limitation of ability to do basic work activities, and her conclusion that Ms. Maez did not have a severe mental impairment. [*Id.* at 16]. Given Dr. Frommelt's experience with the Social Security disability program and its evidentiary requirements and her review of the documentary medical evidence, the ALJ found that Dr. Frommelt had supported her opinions with rationale based on objective findings, Ms. Maez' presenting symptomatology, and Ms. Maez' prior written reports and therefore, he accorded her opinion "great weight." [*Id.*] The ALJ then gave Plaintiff "the maximum benefit of considerable doubt," and found that Ms. Maez had mild-to-moderate difficulties in maintaining social functioning and mild-to-moderate difficulties in maintaining concentration, persistence, or pace. [*Id.*]

---

functional limitations on a continuing basis to justify a finding that either impairment was severe. [#11-2 at 15].

The ALJ then turned to determining Plaintiff's RFC, which he determined to perform work at all exertional levels with no more than occasional dealing with the general public and no complex tasks (SVP of 2 or less). In making such finding, the ALJ considered Ms. Maez' hearing testimony about her bipolar disorder. [*Id.*]. The ALJ further considered Plaintiff's obesity, but observed that her weight did not keep her from doing anything, and her history of past alcohol issues, but recounted Plaintiff's self-report that the alcohol abuse was not an ongoing problem. [*Id.* at 17]. The ALJ also considered medical records from Plaintiff's mental health provider, Spanish Peaks Mental Health Center for the period of September 1, 2009 to September 15, 2011 and the RFC Questionnaire provided by Plaintiff's treating psychiatrist, Dr. Ratner. [*Id.*] In doing so, he determined that Dr. Ratner's opinion should not be accorded controlling weight, and instead, should be given "very little weight" due to discrepancies between Dr. Ratner's responses to the RFC Questionnaire and the medical records. [*Id.* at 18].

At step 4, the ALJ determined that Ms. Maez was unable to perform any past relevant work, concurring with the VE's opinion. [*Id.*]. Then, at step 5, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Ms. Maez was not disabled because she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy based on the testimony of the VE. [*Id.* at 19].

## II.     Plaintiff's Contentions of Error

In her Opening Brief, Plaintiff contends that the ALJ made the following errors in denying her DI and SSI benefits: (1) the ALJ did not have proper reasons for denying controlling weight to Dr. Ratner's opinion; (2) the ALJ did not have proper reasons for rejecting Dr. Ratner's opinion; (3) the ALJ did not have valid reasons for giving Dr. Frommelt's opinion

more weight than Dr. Ratner's opinion; (4) the restrictions in the ALJ's RFC finding are not supported by the evidence; (5) the ALJ should have further developed the record; and (6) the ALJ did not properly account for the mental impairments at step 3. [#14 at iv]. The court addresses each one in turn.

### A. ALJ's Denial of Controlling Weight to Dr. Ratner's Opinion

Plaintiff first argues that the ALJ failed to comply with the rules of law applicable to weighing the treating physician's opinion, namely that the ALJ had an improper reason for denying controlling weight to Dr. Ratner's opinion in the first step of a two-prong analysis set forth in *Krauser v. Astrue*, 638 F.3d 1324 (10th Cir. 2011). [#14 at 21-24]. Plaintiff contends that the ALJ concluded that he denied controlling weight to Dr. Ratner's opinion because Dr. Ratner's opinion of "what claimant's residual functional capacity is" is an issue "reserved to the Commissioner" and as such is "never entitled to controlling weight or special significance." [*Id.* at 22]. Plaintiff argues that the physician's opinion of mental limitations is not considered an issue reserved to the Commissioner, and therefore, in applying the incorrect legal test, reversal is required. [*Id.*] The Response Brief filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner") does not address this first issue. [#15].

The court respectfully disagrees that the ALJ applied the incorrect legal standard. An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1. A "regular and continuing" basis is defined to mean 8 hours a day, for five days a week, or an equivalent work schedule. *Id.* Dr. Ratner checked "no," when stating his opinion whether Plaintiff was "mentally capable of attending work at any job 8 hours per day, 5 days per week."

[#11-7 at 218]. He also had concluded that Ms. Maez would be off task 100% of the week. [*Id.*] The ALJ's decision makes clear that he denied controlling weight to Dr. Ratner's opinions of "what the claimant's residual functional capacity is and whether the claimant is 'disabled" under the Social Security Act,' because he found that these issues were not medical issues regarding the nature and severity of the claimant's impairments but are administrative findings that were reserved to the Commissioner. [#11-2 at 17]. The question of disability is not a medical opinion, but rather is a determination reserved to the Commissioner. *Lately v. Colvin*, 560 Fed. App'x 751, 754 (10th Cir. 2014) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374184, at *7 n.8). Similarly, the determination of a claimant's residual functional capacity, (including whether Ms. Maez could work 8 hours a day, five days a week), is an administrative determination left solely to the Commissioner. *See Russell v. Astrue*, 356 Fed. App'x 199, 203 (10th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(e), 404.1527(e)(1); SSR 96-8p, 1996 WL 374184. As such, the ALJ properly concluded that Dr. Ratner's opinions regarding the claimant's residual functional capacity, and whether she was disabled (as opposed to his medical opinions regarding her functioning) were not entitled controlling weight.

      **B.**     **ALJ's Consideration of Dr. Ratner's Opinion**

Plaintiff next contends that the ALJ, in giving Dr. Ratner's opinion "very little weight," effectively rejected Dr. Ratner's opinion improperly. [#14 at 24-30]. Ms. Maez argues that the ALJ failed to properly consider whether Dr. Ratner's opinion should be entitled to controlling weight, and the ALJ's opinion was not properly supported. [*Id.* at 15-19]. The Commissioner

that the ALJ's decision appropriately addressed the weight given to Dr. Ratner's opinion and how the ALJ arrived at such weight. [#15 at 8-10].

A treating physician's opinion with respect to medical opinions must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Krauser*, 638 F.3d at 1330. If the opinion is deficient in either respect, it is not to be accorded controlling weight. *Id.* If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine a weight to assign it, making clear his reasons. *Id.* Factors relevant to the determination of the weight of the treating physician's opinions include (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the opinion is supported by relevant evidence; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) other evidence in the record considered by the ALJ to support or contradict the opinion. *Id.* at 1331.

To the extent that Plaintiff complains that the ALJ "must identify the deficiencies that deprive controlling weight separately from the deficiencies that warrant rejection," [#16 at 9], the Tenth Circuit has rejected such an argument. The ALJ's decision implicitly addresses the fact that he declined to give Dr. Ratner's medical opinions controlling weight, and the reasons underlying such decision, by analyzing in detail what weight to give Dr. Ratner's medical opinion. *See* [#11-2 at 19]. The ALJ considered that Dr. Ratner had only been treating Ms. Maez since October 2011, and therefore, his opinion that the limitations he listed had existed

since childhood was "ludicrous."³ [*Id.*] He accounted for the fact that Dr. Ratner had consistently reported in his own notes that she had normal Mental Status Examination findings. [*Id.*] He noted that Dr. Ratner's own progress notes were inconsistent with his opinions in the RFC Questionnaire because the notes demonstrated that Plaintiff's mood remained stable the entire time he treated her. [*Id.*]. In doing so, the ALJ's analysis is sufficient, and should not be reversed simply for failing to separately address each step. *See Barber v. Colvin*, Civil Action No. 14-cv-1245-RBJ, 2015 WL 4651644, * 3 (D. Colo. Aug. 6, 2015) (citing *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014); *Tarpley v. Colvin*, 601 Fed. App'x. 641, 643 (10th Cir. 2015)).

The court further finds that the ALJ's determination that Dr. Ratner's opinion should be accorded "very little weight" was appropriate, and was supported by substantial evidence. Contrary to Plaintiff's argument that the ALJ "rejected" Dr. Ratner's opinion, the ALJ simply accorded the treating physician's opinion "very little weight." This conclusion is supported by the record as a whole. The date of Plaintiff's alleged onset of disability is September 1, 2010. As of October 19, 2010, Dr. Ratner's treatment notes indicate that Plaintiff "denies voices, visions, depression, thoughts of harming herself or others, sleep or appetite disturbance, medication side effects, and is compliant with meds." [#11-7 at 204]. Dr. Ratner indicates her "MSE is entirely within normal limits" with respect to mood and affect. [*Id.*] His note reflects that her bipolar disorder is in good medication remission, and that her judgment and insight are

---

³ While this court may have chosen a different adjective to describe the deficiency in Dr. Ratner's determination that Ms. Maez's limitations as reflected in the RFC Questionnaire had been present since childhood, the court's role in this case does not permit it to substitute its judgment for that of the ALJ, so long as the ALJ's determination is supported by substantial evidence. *Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000).

good. [*Id.*]. In January 2011, Dr. Ratner's notes reflect that "She has continued to look for work as a waitress but has not been successful. She feels down about that at times but not significantly depressed." [*Id.* at 202]. She denied mood swings and anxiety at that time. [*Id.*] Dr. Ratner again notes that her "MSE is entirely within normal limits" with respect to mood and affect. [*Id.*] Dr. Ratner's notes from May 12, 2011 again reflect that Ms. Maez continued to be stable, even without medication; her "[e]nergy level good;" and her mood  [*Id.*]. His notes from July 12, 2011 reflect a self-report from Plaintiff stating "I'm feeling good" and his observations that Ms. Maez's energy level was "stable." [*Id.* at 201]. Even into 2012, Dr. Ratner is reporting that she was "a-symptomatic" with respect to energy level, interest, and concentration. [*Id.* at 230]. In her own self-reporting responses to the Function Report dated September 11, 2011, filed after her initial application for disability benefits, Ms. Maez reports that she has trouble concentrating and that she has trouble remembering things [#11-6 at 175, 180], but that she follows written and spoken instructions "very well" [*id.* at 180]; gets along with authority figures "very well" [*id.* at 181]; handles changes in routine "very well" [*id.*].

Therefore, the court finds that the ALJ's determination that Dr. Ratner's opinion should be given "very little weight" is reasonable, and consistent with the record taken as a whole, and therefore, is not a basis for remand.

### C.     Dr. Frommelt's Opinion

Plaintiff next contends that the ALJ did not have valid reasons for giving Dr. Frommelt's opinion more weight than Dr. Ratner's opinion. [#14 at 30-34]. The Commissioner responds by arguing that the ALJ properly assigned the appropriate weight to the treating physician's opinions and provided an appropriate rationale for giving Dr. Frommelt's opinion. [#15 at 10-

11]. In Reply, citing *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004), Plaintiff argues that the ALJ failed to articulate "why the examining physician deserves to outweigh the opinion of the treating physician, not the other way around." [#16 at 11].

*Hamlin* explains that if an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. *Hamlin*, 365 F.3d at 1215. The ALJ must also give good reasons in his written decision for the weight he gave to the treating physician's opinion. *Id.* In this case, ALJ Musseman did both. As discussed in detail above, he gave reasons why he afforded Dr. Ratner's opinions "very little weight." He also explained that he gave Dr. Frommelt's opinion "great weight" because she supported her opinions with rationale based on objective findings, the claimant's presenting symptomatology, and the claimant's prior written reports. [#11-2 at 17]. A review of Dr. Frommelt's report reveals that she considered the reports from Spanish Peaks, including reports from prior to the alleged onset date to after Plaintiff's disability claim was filed. [#11-3 at 43]. The report further accounts for exam notes reflecting Ms. Maez enjoyed her grandson; her mood swings had stabilized; her affect was normal; her insight and judgment were good; her cognition appeared intact; and she had stable energy and concentration levels. [*Id.*] In addition, the ALJ did not rely upon the portions of Dr. Frommelt's opinion that would have been more subject to one-on-one observation such as credibility, instead making his own credibility determination based on the record before him. *Compare* [#11-3 at 45] *with* [#11-2 at 15-16, 18]. As this court interprets it, *Hamlin* does not stand for the proposition that the ALJ must directly compare the reports of the examining and treating health care providers in weighing them in his decision. Nor does Plaintiff cite any case law that suggests that there is a particular rubric that the ALJ must apply. Therefore, the court

finds that so long as the ALJ articulates reasons supported by substantial evidence in the record for the respective weights of the physician's opinions, so that a reviewer may determine the reasons why one opinion was favored over another, the lack of a direct comparison is not grounds for reversal or remand.  *See e.g.*, *Wade v. Colvin*, 26 F. Supp. 3d 1073, 1082 (D. Colo. 2014) (perceiving no reversible error in the ALJ's determination to afford the greatest weight to the non-treating physician); *Hartman v. Colvin*, Civil Action No. 14-cv-01510-MEH, 2015 WL 1609806, *16 (D. Colo. Apr. 9, 2015).

### D.     Restrictions in the ALJ's RFC Finding

Plaintiff next argues that the restrictions in the ALJ's RFC finding are not supported by the evidence, because there is no evidence to support the ALJ's findings that Plaintiff may have occasional interaction with the public. [#14 at 34-37].  The Commissioner argues that there is no requirement for direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question, and that the ALJ considered all the objective medical evidence as well as opinion evidence and Plaintiff's own statements in accordance with the regulations and law. [#15 at 11-13].  This court agrees.

In assessing Plaintiff's RFC, the ALJ clearly considered the record as a whole.  He accounted for the testimony that she provided, including her testimony that she has high energy at times, but mostly low mood, low energy, and sadness, when she stays in her room. [#11-2 at 16]. Plaintiff reported four days of the week of low energy, presumably leaving three others. [*Id.*] The ALJ also looked to the medical records from Spanish Peaks Mental Health Center that reflected that her medication was working, and her moods were stable. [*Id.* at 17].  The ALJ also reviewed the opinion evidence of Dr. Ratner in detail, including his opinion that she had no

limitation son the ability to maintain socially appropriate behavior and to adhere to the basic standards of neatness and cleanliness. [*Id.*]. Though not explicit, the ALJ presumably also considered Dr. Frommelt's opinions since they informed his decision about her impairment at step 3. [*Id.* at 15-16]. The ALJ also afforded Ms. Maez "the maximum benefit of considerable doubt," finding that "the claimant has mild-to-moderate difficulties in maintaining social functioning and mild-to-moderate moderate [sic] difficulties in maintaining concentration, persistence, or pace." [*Id.* at 16].

As discussed above, the record also contains references directly from Ms. Maez after the date of her alleged onset stating that she follows written and spoken instructions "very well" [#11-6 at 180]; gets along with authority figures "very well" [*id.* at 181]; handles changes in routine "very well" [*id.*]. I find that, upon review of the record, the ALJ's RFC assessment that included a limitation that Plaintiff could have occasional contact with the public was supported by substantial evidence.

### E. The ALJ's Development of the Record

Plaintiff also argues that the ALJ should have further developed the record, and by failing to do so, he improperly substituted his own assessment of the medical data for those of a medical expert. [#14 at 37-28]. The Commissioner argues that Dr. Frommelt provided a reasonable and adequate analysis, and that the ALJ had enough information from the record to assess Plaintiff's RFC. [#15 at 13]. This court agrees.

The ALJ's decision accounts for the different inputs of the record, including Ms. Maez's testimony, the RFC Questionnaire provided by her treating physician, the opinion of the State examining psychologist, and Ms. Maez's contemporaneous medical records. [#11-2 at 15-19].

The court finds no merit in Plaintiff's contention that once Dr. Ratner's opinion was "rejected," the record lacked sufficient information upon which the ALJ could determine Plaintiff's RFC. [#14 at 38]. As an initial matter, as discussed above, the court does not agree that the ALJ rejected Dr. Ratner's opinions. Instead, I find that the ALJ devotes considerable time and energy to considering Dr. Ratner's opinions, *see* [#11-2 at 17-18], and conclude that the record was sufficiently developed for the ALJ to make a determination of Plaintiff's RFC.

### F.     Consideration of Mental Health Limitations in Step 5

Finally, Plaintiff contends that the ALJ failed to properly account for her mental health limitations (as determined in step 3) in step 5 of his analysis. She contends the ALJ's attempt to address her mild-to-moderate limitation on concentration, persistence or pace as determined in step 3 by limiting her to unskilled jobs was improper, and that there is no evidence in the record that she can perform the broad range of unskilled jobs despite her severe mental impairments. [#14 at 41-42]. The Commissioner disagrees, arguing that a limitation to perform unskilled work means that an individual can do all of the following: understanding, remembering, and carrying out simple instructions; making simple work-related decisions; and responding appropriately to supervision. [#15 at 15 (citing SSR 96-9, 1996 WL 374185, at *9]. However, the Commissioner failed to address how the ALJ accounted for Plaintiff's mild-to-moderate limitations to concentration, persistence or pace to the hypothetical posed to the VE. [#15]. In Reply, Plaintiff contends that the ALJ's failure to ask the VE about those particular mental impairments constitutes error. [#16 at 17-19].

This court finds that Plaintiff is correct that the ALJ's formulation of questions to the VE failed to account for the limitations in maintaining concentration, persistence, or pace. While

ALJ Musseman asked the VE about non-exertional limitations of only occasional dealing with the general public and no complex tasks defined as SVP 2 or less, he did not specifically ask about mild-to-moderate difficulties in maintaining concentration, persistence, or pace. The court agrees that the ALJ's limitation of "no complex tasks defined as SVP 2 or less" did not account for her deficits in concentration, persistence or pace. *See Vialpando v. Colvin*, Civil Action No. 13-cv-03065-WYD, 2015 WL 1433293, *6 (D. Colo. Mar. 25, 2015). And while the VE had heard Ms. Maez testify that she couldn't concentrate on things like television shows or conversations with others and that she had no energy to do anything when she was in a low mood [#11-2 at 27], nothing in the hypothetical questions posed to the VE, by either the ALJ or the attorney, encompassed the mild-to-moderate limitations in maintaining concentration, persistence, or pace.  [*Id.* at 32-33].

As discussed above, at step 5, the burden of proof shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy that the claimant can perform. An ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).  But testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).  The omission of the mild-to-moderate limitation on concentration, persistence or pace undermines the VE's testimony about jobs potentially available to Ms. Maez and the ALJ's determination that she can engage in substantial gainful activity.  *Tucker v.*

*Barnhart*, 201 F. App'x 617, 624 (10th Cir. 2006).  On remand, the ALJ is directed to include Plaintiff's mild-to-moderate limitations to concentration, persistence or pace to the VE.

## CONCLUSION

For the reasons set forth herein, the court hereby AFFIRMS IN PART, and REVERSES AND REMANDS IN PART, for further consideration of step 5 to include Plaintiff's specific mild-to-moderate limitations regarding concentration, persistence or pace.

DATED:  September 30, 2015                    BY THE COURT:

                                                          s/ Nina Y. Wang
                                                          Nina Y. Wang
                                                          United States Magistrate Judge